OPINION OF THE COURT
Wallace R. Cotton, J.
The court holds that where the City of New York (hereinafter referred to as City) and its police officer employee are defendants in a tort action which had been instituted prior to July 13, 1979, and the City is subsequently held liable to the plaintiff therein upon the ground that its police officer, who was negligent, was acting within the scope of his employment, the City is under a statutory duty to indemnify the police officer for the reasonable value of attorneys’ fees which he had incurred in retaining private counsel to defend him in the tort action when the Corporation Counsel, the City’s chief legal officer, chose not to represent the officer (General Municipal Law § 50-j* [prior to its 1979 amendment]; § 50-Z [prior to its repeal in 1979]; § 50-k [savings provision, L 1979, ch 673, § 12 (a)]).
A New York City police officer, Edwin Young, has brought the instant action to recover a money judgment against the City, the *120 Mayor and the Corporation Counsel for attorneys’ fees he had incurred in retaining private counsel to defend himself in a wrongful death action which had been previously commenced against him, as well as several other police officers and the City.
Officer Young’s complaint for attorneys’ fees is predicated upon two legal theories, each set forth in two separate causes of action. The first one is essentially based upon the fact that the jury in the underlying wrongful death action had determined that he had acted within the scope of his employment. The second one alleges that the defendants herein breached a legal duty to provide him with legal representation in that action. The defendants, however, deny all liability to Young for attorneys’ fees and, pursuant to CPLR 3212, now move for summary judgment dismissing his complaint.
The motion is granted to the extent of dismissing the plaintiff’s complaint against the Mayor and the Corporation Counsel, who are not proper parties to this action, as well as dismissing the second cause of action against the City. A motion for summary judgment, however, invites a court to “search the record” and to award summary judgment to the nonmoving party, where appropriate (CPLR 3212 [b]; Fertico Belgium, S. A. v Phosphate Chems. Export Assn., 100 AD2d 165, 171). Turning now to the record presented to the court by the City, it appears that the nonmovant, Officer Young, is also entitled to summary judgment, limited to the issue of liability, on his first cause of action against the City for attorneys’ fees.
In 1975, City police officers were investigating criminal activity inside a Bronx apartment building when, suddenly, they were greeted by a gunshot fired from within one of the apartments. None of the officers were hit by the bullet; however, after gaining access to the apartment from where the shot had been fired, one of the officers, Thomas Ryan, enraged by the shooting, struck and beat the assailant, Israel Rodriguez. Officer Ryan also struck Rodriguez in the station house. Rodriguez, who sustained a ruptured spleen, was thereafter taken to the hospital, where he died in surgery.
Officer Young, and several other City police officers were present in the apartment and the precinct house when the above events occurred, but neither Young nor the other police officers had assaulted Rodriguez. Ryan had acted alone, and was subsequently convicted of criminally negligent homicide.
In 1976, approximately one year after Rodriguez had died, the administratrix of his estate commenced a wrongful death action against the City and the several officers who were present at the *121 scene, including Officer Young. The complaint alleged, inter alla, that the defendant police officers had acted in the scope of their employment. The City, however, had served an answer wherein it set forth as an affirmative defense that the defendant officers had acted outside the scope of their employment.
The initial answer served by the Corporation Counsel was only in behalf of the City. Although the City had subsequently served an amended answer representing all of the defendant officers, it again asserted as an affirmative defense that the officers had acted outside the scope of their authority. However, it then became readily apparent that the Corporation Counsel could not defend the City in the wrongful death action by steadfastly maintaining that the defendant officers had acted outside the scope of their authority and, simultaneously, represent the officers as well. Therefore, the Corporation Counsel subsequently made an application to be relieved as counsel for the officers.
In granting the Corporation Counsel’s request, my learned colleague, Justice DiFede, issued an opinion, stating in part as follows: “In view of the possibility that the City may be called upon to respond in damages for the acts of its employees herein and that the City seeks to establish that the acts of the defendants arose outside of the scope of their employment, a stronger conflicting position would be difficult to imagine”. In an earlier portion of the opinion, Justice DiFede had observed: “It is clear that the root issue in the civil action is whether the acts ascribed to the individual defendants were committed within the scope of their employment as police officers of the City of New York. A finding thereof could serve as legal basis for the imposition of vicarious liability therefore under General Municipal Law Section 50-k. It is this responsibility which the City seeks to avoid and desires an independent untrammelled course to pursue that objective. With one counsel to represent two so diverse positions, it would be in every way impossible for the Corporation Counsel to maintain undivided loyalty to the legal positions of both the municipal and individual defendants”. Thus, Officer Young was obliged to retain private counsel to defend himself in the Rodriguez wrongful death action.
At this point it should be noted, parenthetically, that the Rodriguez estate was ultimately awarded summary judgment against Officer Ryan on the issue of liability by reason of his conviction for criminally negligent homicide. As a result, the Rodriguez action against Ryan was severed.
*122 The Rodriguez action subsequently proceeded to trial, where the City had vigorously argued before the jury that Officer Young and the other officers had acted outside the scope of their employment. But the jury disagreed, returning a verdict in a substantial sum in favor of the Rodriguez estate against the City, Officer Young, and another officer, Sergeant Riccio. The jury apportioned 5% of' the liability to Officer Young, 15% to Sergeant Riccio, and the balance, 80%, to the City. Most significantly, the jury specifically stated that “[Officer] Young’s negligent acts were performed in the furtherance of the business of the City of New York and within the scope of his authority as a police officer” (emphasis added). (Apparently, the negligence of Officer Young consisted of the fact that he did not intercede in Ryan’s assault of Rodriguez, or summon prompt medical attention for the deceased prior to his demise.)
The Appellate Division, upon appeal by the City, declined to disturb the jury’s imposition of liability against the City, which was predicated upon a factual determination that Officer Young and the other policemen were negligent and had acted within the scope of their employment (Rodriguez v City of New York, 92 AD2d 813). The appellate court had only reduced the amount of damages which the jury had awarded to the Rodriguez estate. A further appeal by the City to the Court of Appeals resulted in an affirmance of the Appellate Division’s decision (62 NY2d 673).
In moving for summary judgment to dismiss Young’s complaint for attorneys’ fees, the defendants present several arguments. They first maintain that in the absence of a statute expressly authorizing the City to pay the fees and expenses of a private attorney who represents a municipal employee, the City is not permitted to do so, citing Corning v Village of Laurel Hollow (48 NY2d 348). In that case the issue presented was whether certain former high-ranking officials of the Village of Laurel Hollow were entitled to reimbursement from the village for their costs, disbursements and legal fees incurred in asserting a successful defense to a civil rights action brought against them as a result of acts performed in their official capacities. In resolving the issue against the plaintiffs, the Court of Appeals, per Chief Judge Cooke, reasoned as follows (48 NY2d, at pp 351-352): “Plaintiffs do not quarrel with the proposition that, in the absence of extraordinary circumstances not present here, a municipality may not be compelled to compensate for services rendered by an attorney unless his retainer is authorized by statute or appropriate resolution of the governing body (e.g., Cahn v Town of Huntington, 29 NY2d 451,454-455; Seif v City of Long Beach, 286 NY 382, 386-387; Lyddy v Long Is. City, 104 *123 NY 218, 222-223; 10 McQuillin, Municipal Corporations, § 29.11). The rationale underlying this rule — to guard against extravagance and collusion on the part of public officials — is aptly illustrated by the circumstances here. Dissatisfied with their representation by the Nassau County Attorney, plaintiffs summarily dismissed him and retained one of the more esteemed and, as this record bears out, costly, New York law firms. This, of course, they had every right to do. But this does not mean that the village must underwrite the consequences of plaintiffs’ choice. Were this construction to be adopted, it would enable all public officials to employ counsel whenever it is deemed desirable, and thus, unilaterally empower them to create municipal debt. Allowing these plaintiffs reimbursement would result in a drastic departure from the safeguards erected about the disposition of public funds and would invite invasions of the public fisc for purely personal benefit. Having chosen to forsake the representation gratuitously provided them, plaintiffs may not now seek public funds to alleviate the cost of that selection (see People ex rel. Van Keuren v Board of Town Auditors of Town of Esopus, 74 NY 310, 313-314)”.
The rationale of the Corning case {supra), however, is inapplicable to the case at bar, not because the Corporation Counsel here in effect discharged Officer Young, rather than vice versa as had occurred in Corning, but because there does in fact exist the requisite statute which entitles Officer Young to the relief sought in the first cause of action of the complaint. The applicable statute, which was in effect on the date the Rodriguez action was commenced, as well as when the tort had occurred, is General Municipal Law § 50-j, and it provides as follows: “1. Notwithstanding the provisions of any general, special or local law, charter or code to the contrary, every city, county, town, village, authority or agency shall be liable for, and shall assume the liability to the extent that it shall save harmless, any duly appointed police officer of such municipality, authority or agency for any negligent act or tort, provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment”.
The primary consideration of the court in the construction of statutory provisions is to ascertain and give effect to legislative intent (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [all-in effecting that objective, the courts are first bound to ascertain such intent from a literal reading of the words and language in the statute itself (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b]; § 94; see, Finger Lakes Racing Assn. v New York *124 State Racing & Wagering Bd., 45 NY2d 471, 479-480). Further, where a statute is clear on its face and its words are possessed of a definite and precise meaning, resort to extrinsic matter, such as legislative history is inappropriate (see, Giblin v Nassau County Med. Center, 61 NY2d 67, 74; Matter of Daniel C., 99 AD2d 35, 41, mot for stay denied 61 NY2d 1025). With these principles in mind, it appears that section 50-j (1) contains a very clear and unqualified indemnification clause. If a police officer commits a negligent or other tortious act in the scope of his employment while acting as a police officer, then subdivision (1) plainly commands that the municipal employer shall hold him harmless in the event of civil litigation.
In enacting section 50-j, the Legislature was presumably aware that indemnification under common law includes attorneys’ fees (Owens v Palm Tree Nursing Home, 89 AD2d 619, 620; 28 NY Jur, Indemnity, § 23). Thus, in reading section 50-j, the court is unable to discern a legislative intent to cloak police officers with a lesser form of indemnity by limiting the municipality’s obligation to payment of the judgment. Certainly, the statute does not contain any restrictive language. It is significant to note, however, that when the Legislature subsequently enacted employee indemnification legislation in 1979, discussed, infra, covering a particular group of municipal employees, the Legislature did in fact restrict the municipality’s liability to the amount of the judgment. But the Legislature has never amended section 50-j to include the same limitation.
Moreover, in a 1981 opinion, the State Comptroller held that under section 50-j, “a city is obligated to defend, or reimburse the legal expense of, its former police chief who is sued for civil damages in a false imprisonment action, provided that the chief at the time of the alleged tort was acting in the performance of his duties and within the scope of his employment” (1981 Opns St Comp No. 81-292, at 314).
In contrast to the unrestrictive save harmless indemnification clause contained in section 50-j (1), observe the restrictive one in section 50-k (3), enacted in 1979, which reads as follows: “The city [of New York] shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court * * * provided that * * * the employee was acting within the scope of his public employment”. Here, the Legislature manifested an unmistakable intent to limit indemnification to the amount of the judgment and, consequently, attorneys’ fees are not encompassed within the statute. But as will be seen, infra, the instant action is governed *125 by section 50-j (prior to its 1979 amendment), which contains no such limitation.
Therefore, under section 50-j (1), as'enacted, the City is under a statutory duty to save Officer Young harmless for the reasonable value of attorneys’ fees he had incurred in defending the Rodriguez suit, since a jury had found, as previously stated, that “[Officer] Young’s negligent acts were performed in the furtherance of the business of the City of New York, and within the scope of his authority as a police officer”.
Accordingly, the court grants Officer Young summary judgment against the City on his first cause of action and directs that the matter be set down for an assessment of damages. There are, however, several other issues raised by the defendants which remain for discussion.
In their brief, the defendants state that sections 50-j and 50-k (a statute which was designed to provide similar protection to policemen sued in Federal courts) were repealed in 1979, and in their place the Legislature enacted the current version of General Municipal Law § 50-k (L 1979, ch 673). The defendants are partially in error. Only section 50-k was repealed. Section 50-j was merely amended to provide that its provisions shall no longer apply to the City of New York or the New York City Housing Authority (L 1979, ch 673, § 6; L 1980, ch 488, § 3). In any event, the defendants go on to persuasively argue that under section 50-k (3) (as enacted in 1979), a police officer cannot recover his attorneys’ fees and expenses as an aspect of the City’s obligation to indemnify and save harmless its employees. The court agrees and, in fact, as previously stated above when it compared the expansive save harmless clause of section 50-j with the restrictive one of section 50-k, that section 50-k (3) limits the City’s obligation to the amount of the judgment or settlement (provided other prescribed statutory conditions have been met).
Thus, if section 50-k were indeed applicable to the instant action, the defendants would be entitled to a dismissal of the complaint. However, in 1979, when the Legislature enacted section 50-k, repealing the prior one, and amended section 50-j, as well as amending or repealing other analogous statutes (§§ 50-a, 50-b, 50-c, 50-d, 50-Z, and 50-m), it also enacted a savings provision (L 1979, ch 673, § 12 [a]) of utmost importance and relevance to the issue now under consideration. The savings provision, which appears in the footnotes to section 50-k (McKinney’s Cons Laws of NY, Book 23, General Municipal Law § 50-k, 1984-1985 Pocket Part, p 89), provides as follows: “The *126 right of any employee, as the same is defined in subdivision e of section 50-k of the general municipal law, to representation or indemnification pursuant to the provisions of any section repealed or amended by this act for any act or omission alleged to have occurred prior to the effective date of the act [July 13,1979] shall not be impaired or forfeited by the adoption of this act” (emphasis added).
Section 50-j was one of the amended sections, but since Young’s negligence had occurred prior to July 13,1979, his right to statutory indemnification under section 50-j has been expressly preserved by virtue of the savings provision, quoted above. Thus, the City’s reliance on section 50-k is completely misplaced. The Legislature, in enacting the savings provision as part of the legislative package which amended or repealed sections 50-a, 50-b, 50-c, 50-d, 50-j, 50-Z and 50-m obviously recognized the serious constitutional problems which could have arisen if it had attempted to vitiate or impair substantive rights which were established by the unrestrictive indemnity provisions of the affected legislation.
The defendants, however, present additional arguments for dismissal of the complaint. They assert that the decision of the Corporation Counsel not to represent Young in the Rodriguez case was not arbitrary or capricious. They reason as follows: “The scope of judicial review of a decision of the Corporation Counsel not to represent an employee of the City of New York is extremely limited. Under General Municipal [Law] § 50-k (2), the Corporation Counsel has sole discretion for determining whether the act or omission of the employee occurred within the scope of his public employment * * * In addition, once having undertaken to represent an employee, the Corporation Counsel must decide whether the employee has met his obligation under the statute to cooperate in presenting his defense. General Municipal Law § 50-k (4). A court cannot substitute its judgment for that of the Corporation Counsel unless the latter’s decision not to represent, or to continue to represent, an employee is clearly arbitrary and capricious and an abuse of his discretion”.
While this argument is certainly relevant where an action for indemnification is governed by section 50-k (see, Matter of Williams v City of New York, 64 NY2d 800), we have just seen that the savings provision, supra, does not impair or forfeit Young’s rights to have his indemnification action adjudicated under the provisions of section 50-j (before its amendment in 1979), and under section 50-j the sole factor which determines if the police *127 officer is entitled to be saved harmless for a negligent act is whether he “was acting in the performance of his duties and within the scope of his employment”. Thus, assuming that the Corporation Counsel’s decision not to represent Young was neither arbitrary nor capricious, it just has no bearing on Young’s right to be saved harmless for attorneys’ fees in accordance with the broad indemnification provision of section 50-j (1).
The defendants also argue that Justice DiFede’s order, which granted the Corporation Counsel’s application to relieve him from representing Young and the other policemen who had been named as defendants in the Rodriguez suit, precludes Young from relitigating the issues of whether the Corporation Counsel breached a duty to represent him. The court agrees and, accordingly, dismisses the plaintiff’s second cause of action. Nevertheless, as recognized by the defendants, and aptly stated by them: “The court [Justice DiFede] cautioned that its decision did not reach the issue of the ultimate liability of the City to save harmless and indemnify the individual defendants under the governing statutes, an issue distinct from the question of the Corporation Counsel’s obligation to provide representation”. Thus, the plaintiff’s first cause of action, wherein he seeks to be held harmless by the defendants by reason of the fact that he had been adjudged to have acted within the scope of his employment, is unaffected by the court’s dismissal of his second cause of action.
Finally, the defendants assert that the instant action is barred by the four-month Statute of Limitations (CPLR 217) because after the Legislature had enacted section 50-k in 1979 plaintiff had failed to institute a CPLR article 78 proceeding to compel the Corporation Counsel to reconsider his decision, and represent him in the Rodriguez action. This argument lacks merit. First of all, it is difficult to understand how Young could have been expected to initiate the article 78 proceeding against the Corporation Counsel when the City’s attorney had previously secured judicial permission, after moving on notice, to withdraw from representing him. Furthermore, Officer Young was entirely justified in relying on the “save harmless” provision, section 50-j, inasmuch as the savings provision (L 1979, ch 673, § 12 [a]), discussed above, preserved all his rights to complete indemnification under section 50-j.
Moreover, until it had been decided in the Rodriguez action that he had in fact acted within the scope of his employment, any action by Young for indemnification would have been pre *128 mature, either under section 50-j or 50-k. Since the scope of employment issue was not determined until 1981, when the jury returned its verdict, the instant action, brought in 1982, is not time barred.
In conclusion, the City was faced with two choices in defending the Rodriguez action. It could have acknowledged that Officer Young had acted within the scope of his employment, defended him and denied that he had been negligent. On the other hand, the City could have compelled Officer Young to retain separate counsel in order to argue that he had acted outside the scope of his employment and, therefore, that it was not liable to the Rodriguez estate. The City had opted for the latter choice, but lost, all the way to the Court of Appeals. Now it must save Officer Young harmless in accordance with the clear mandate of section 50-j (1). Nevertheless, that section only imposes the duty of indemnification upon the City, and not its officials. Thus, the Mayor and the Corporation Counsel are not proper parties to this lawsuit. Accordingly, plaintiff’s action against them is hereby dismissed.

 The General Municipal Law contains two sections designated section 50-j. At all times in the opinion, the court is referring to the one which appears first.